**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

SGO CORPORATION LIMITED,

                Defendant.

Case No. 24-cr-20343 (KMW)

**SGO CORPORATION LIMITED'S MOTION TO DISMISS THE SUPERSEDING**
**INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

I.    The DOJ Departs from Prior Charging Decision and FCPA Policy to Indict SGO ........... 2

    A.    The DOJ's Investigation and Initial 2024 Indictment............................................. 2

    B.    SGO Is Charged Despite DOJ's Broad Reduction in FCPA Enforcement............. 3

II.    The Current Administration and Its Allies' Long-Running Campaign Against
Smartmatic ........................................................................................................................ 5

    A.    President Trump's "Stop the Steal" Campaign....................................................... 5

    B.    Smartmatic Sues President Trump's Political Allies for Defamation ................... 6

    C.    In 2025, the Trump Administration Resumes Focus on the 2020 Election
and Vindictively Deploys the DOJ ........................................................................ 6

    D.    The Administration and Its Allies' Post-Indictment Attacks on SGO.................. 8

ARGUMENT ........................................................................................................................ 10

I.    The Government Has Vindictively Prosecuted SGO......................................................... 12

    A.    The Government's Actual or Presumed Vindictiveness Towards SGO ............... 13

    B.    The Administration's Animus Towards SGO Contributed to Its Indictment ....... 14

II.    The Government Has Selectively Prosecuted SGO in Violation of the Equal
Protection Clause ............................................................................................................. 15

    A.    The Government Has Declined to Prosecute or Dismissed Charges
Against Similarly Situated Companies and Individuals ....................................... 16

    B.    SGO Was Indicted with Discriminatory Purpose ................................................ 17

III.    At a Minimum, SGO Is Entitled to Discovery and a Hearing ......................................... 18

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ames v. Ohio Dep't of Youth Servs.*,
   605 U.S. 303 (2025)...................................................................................14

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978)...................................................................................10

*Bragan v. Poindexter*,
   249 F.3d 476 (6th Cir. 2001) ...................................................................11

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)...................................................................................11

*Fed. Educ. Assoc. v. Trump*,
   No. 25-cv-1362 (D.D.C. Aug. 14, 2025) .................................................11

*Goodfellas, Inc. v. Dunkel*,
   2016 WL 6599977 (M.D. Pa. 2016) ........................................................17

*Harrison v. Springdale Water & Sewer Comm'n*,
   780 F.2d 1422 (8th Cir. 1986) .................................................................15

*Little v. City of North Miami*,
   805 F.2d 962 (11th Cir. 1986) .................................................................14

*Newsmax v. Fox*,
   3:25-cv-00770 (W.D. Wis. 2025) ............................................................10

*Smartmatic USA Corp., et al v. Fox Corp. et al.*,
   Index No. 151136/2021 (N.Y. Sup. Ct.)...........................................6, 9, 10

*Smartmatic USA Corp., et. al. v. Newsmax Media, Inc.*,
   No. N21C-11-028 (Del. Super. Ct.)............................................................6

*Smartmatic USA Corp. v. Herring Networks, Inc.*,
   No. 1:21-cv-02900 (D.D.C.) .......................................................................6

*Smartmatic USA Corp. v. Lindell*,
   No. 0:22-cv-0098 (D. Minn.)...................................................................6, 9

*United States v. Abrego-Garcia*,
   802 F. Supp. 3d 1055 (M.D. Tenn. 2025)...................................18, 19, 20

*United States v. Adams,*
   870 F.2d 1140 (6th Cir. 1989) ......................................................................13, 18

*United States v. Adams,*
   No. 1:24-cr-00556 (S.D.N.Y. Apr. 2, 2025) ....................................................4

*United States v. Armstrong,*
   517 U.S. 456 (1996)...................................................................................10, 15

*United States. v. Barner,*
   441 F.3d 1310 (11th Cir. 2006) .............................................................12, 13, 14

*United States v. Batchelder,*
   442 U.S. 114 (1979).......................................................................................10

*United States v. Bundy,*
   968 F.3d 1019 (9th Cir. 2020) .......................................................................18

*United States v. Cannon,*
   987 F.3d 924 (11th Cir. 2021) .......................................................................16

*United States v. Coburn and Schwartz,*
   No. 2:19-cr-00120 (D.N.J.).............................................................................4

*United States v. Comey,*
   No. 1:25-cr-272 (E.D. Va.) .............................................................................7

*United States v. Falk,*
   479 F.2d 616 (7th Cir. 1973) ...................................................................15, 16

*United States v. Goodwin,*
   457 U.S. 368 (1982).......................................................................................12

*United States v. Howell,*
   17 F.4th 673 (6th Cir. 2021) ..........................................................................20

*United States v. James,*
   No. 2:25-cr-122 (E.D. Va.) .............................................................................7

*United States v. Jordan,*
   635 F.3d 1181 (11th Cir. 2011) .....................................................................19

*United States v. Nixon,*
   418 U.S. 683 (1974).......................................................................................10

*United States v. Noriega,*
   2:10-cr-01031 (C.D. Cal. 2010)......................................................................4

*United States v. Olvis*,
    97 F.3d 739 (4th Cir. 1996) ..................................................................16

*United States v. Paramo*,
    998 F.2d 1212 (3d Cir. 1993) ................................................................12

*United States v. Sanders*,
    211 F.3d 711 (2d Cir. 2000) ..................................................................13

*United States v. Slatten*,
    865 F.3d 767 (D.C. Cir. 2017) ..............................................................12

*United States v. Smith*,
    231 F.3d 800 (11th Cir. 2000) ..............................................................11

*United States v. Steele*,
    461 F.2d 1148 (9th Cir. 1972) ..............................................................15

*United States v. Torquato*,
    602 F.2d 564 (3d Cir. 1979) ..................................................................17

*United States v. Trump*,
    23-cr-00257 (D.D.C.) ..............................................................................5

*United States v. Webb*,
    No. 1:15-cr-00252 (E.D.N.Y. Dec. 9, 2025) ..........................................4

*United States v. Wilson*,
    262 F.3d 305 (4th Cir. 2001) ..........................................................12, 14

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ..............................................................................16

## RULES

Fed. R. Crim. P. 12 ......................................................................................10

## PRELIMINARY STATEMENT

To secure the Constitution's promise of due process, an indictment's accusations must follow only from fair and impartial decision-making, free from improper political motives or the desire to arbitrarily punish someone the Executive Branch dislikes. But since returning to office, President Trump has openly waged a campaign of retribution against his perceived enemies—chief among them those who undermine his mantra that the 2020 election was rigged—and demanded the Department of Justice ("DOJ") take up the sword. SGO Corporation Limited ("SGO"), the United Kingdom-based parent company of Smartmatic USA Corporation ("Smartmatic USA"), is among the latest victims of this punitive and unconstitutional use of prosecutorial power. Smartmatic USA is an election technology and services company that the President's allies and media defenders, including Fox News, have repeatedly and falsely claimed was somehow responsible for him losing the 2020 U.S. presidential election. As a result, in the years since that election, Smartmatic USA has exercised its right to hold those individuals and entities legally accountable for their deluge of defamatory statements and the attendant damage inflicted on its business, putting it squarely in the crosshairs for retribution.

In August 2024, while President Trump and his allies were out of power, the DOJ brought charges against the individual defendants in this case but chose not to indict SGO or any Smartmatic affiliate. Fourteen months after the DOJ (correctly) chose not to prosecute SGO, and with a trial date set and pre-trial litigation under way, President Trump's new DOJ took the exceedingly rare action of indicting the company for allegedly violating the Foreign Corrupt Practices Act ("FCPA")—a step the DOJ had not taken against *any* company for 15 years. That charging decision directly conflicted with the Department's new policies and was not supported by a change in the law or the evidence. Instead, the only consequential changes in this case since

2024 were the President, his DOJ, and their well-documented crusade to unconstitutionally target their perceived political enemies, like Smartmatic.

Because such an abuse of prosecutorial discretion offends the Constitution and the rule of law, this Court should dismiss the superseding indictment with prejudice. At a minimum, the Court must permit discovery as to President Trump and his political allies'—many of them highly motivated defendants in the defamation cases brought by Smartmatic who face potential damages in the billions—improper involvement in the DOJ's decision to vindictively and selectively target SGO for prosecution.

## STATEMENT OF FACTS

### I.    The DOJ Departs from Prior Charging Decision and FCPA Policy to Indict SGO

#### A.    The DOJ's Investigation and Initial 2024 Indictment

In August 2024, the DOJ indicted four individuals for alleged FCPA and money laundering violations arising from Smartmatic's provision of technology in the 2016 Philippines election. At that time, having investigated the matter for more than six years, the DOJ did *not* seek any charges against the company, which had been cooperating with the DOJ's investigation since it first learned of it in 2021, including by producing millions of pages of documents and making fact presentations to the DOJ.

From SGO's perspective, having cooperated for years, the government appeared to have concluded the investigation of 2016 events with its August 2024 indictment. The government committed to trial dates—first in October 2025, then in April 2026—and undertook Rule 15 depositions abroad. Yet, in October 2025—following the change in administration and in the midst of President Trump's demands to prosecute his perceived enemies—the DOJ reversed course and charged SGO.

**B.      SGO Is Charged Despite DOJ's Broad Reduction in FCPA Enforcement**

SGO's indictment for alleged FCPA violations was a departure from a series of policy announcements and Executive Orders that effectively halted FCPA enforcement in 2025. Specifically, on February 5, 2025, Attorney General Pamela Bondi ordered a marked shift in FCPA priorities, pronouncing that DOJ would "prioritize investigations related to foreign bribery that facilitates the criminal operations of Cartels and TCOs," such as cases involving "human smuggling and the trafficking of narcotics and firearms," and "shift focus away from investigations and cases that do not involve such a connection."[1] A few days later, on February 10, 2025, the President issued an unprecedented executive order pausing enforcement of the FCPA; ordered a six-month embargo on any new FCPA investigations and prosecutions; and directed the DOJ to "review in detail all existing FCPA investigations or enforcement actions and take appropriate action with respect to such matters to restore proper bounds on FCPA enforcement and preserve Presidential foreign policy prerogatives."[2]

In line with these Presidential directives, the DOJ swiftly and publicly abandoned large numbers of active FCPA and bribery matters. *See* A-31.[3] For example, in April 2025, the DOJ voluntarily dismissed FCPA charges against two executives—just days before trial was scheduled to begin, in a case that had been pending for over six years and was originally indicted during

---

[1] U.S. Dep't of Justice, Office of the Attorney General, Memorandum for All Department Employees, *Total Elimination of Cartels and Transnational Criminal Organizations* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388546/dl?inline (on file with author).

[2] Exec. Order 14209, 90 FR 9587 (Feb. 10, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/pausing-foreign-corrupt-practices-act-enforcement-to-further-american-economic-and-national-security/.

[3] Citations to public statements and news articles are set forth chronologically in Appendix A, denoted A-1, etc.

President Trump's first term.[4] The DOJ, in its motion, stated that the government was dismissing the indictment based on the application of President Trump's February 10, 2025 Executive Order. The same month, the DOJ dismissed the bribery indictment against then-New York City Mayor Eric Adams over the objection of a dozen career prosecutors. *United States v. Eric Adams*, No. 1:24-cr-00556 (S.D.N.Y. Apr. 2, 2025), Dkt. No. 177. And in December 2025, the DOJ abandoned its corruption case against a company and executives who had been convicted at trial for their roles in a global corruption scheme involving the bribery of FIFA executives. *United States v. Webb*, No. 1:15-cr-00252 (E.D.N.Y. Dec. 9, 2025), Dkt. No. 2070. Since re-election, the President has also pardoned or commuted the sentences of dozens of individuals convicted of bribery and money laundering offenses over the course of his first year in office.[5]

But while the Department abandoned other FCPA and bribery cases in line with the Administration's new policies, in October 2025, the DOJ dealt with Smartmatic in a way that was completely antithetical to its own pronouncements. As discussed below, the DOJ's decision to single out SGO for prosecution—the first time it had indicted a company on FCPA charges in 15 years[6]—only makes sense in the context that Smartmatic has continued to pursue defamation litigation against the President's allies for destroying its business.

---

[4] *United States v. Gordon Coburn and Steven Schwartz*, No. 2:19-cr-00120 (D.N.J.), Dkt. Nos. 824, 1034. The government dismissed the case less than six weeks after it had informed the Court that it was proceeding to trial notwithstanding the Executive Order, *id*. at Dkt. Nos. 834, 1034—demonstrating the haphazardness of the current DOJ's enforcement of the FCPA.

[5] Indeed, since retaking office, President Trump has pardoned at least 38 individuals charged with or convicted of a total of fraud, corruption, and money laundering offenses. A-30; *see also* A-17 (wind-down of public corruption enforcement); A-21 (pardon of former congressman George Santos); A-32 (pardons of Venezuelan banker and former Governor of Puerto Rico).

[6] *See United States v. Aguilar*, No. 2:10-cr-01031 (C.D. Cal. 2010) (commonly referred to as the "*Lindsey Manufacturing*" case after the corporate defendant, Lindsey Manufacturing Company), Dkt. No. 48; A-1.

## II.    The Current Administration and Its Allies' Long-Running Campaign Against Smartmatic

### A.    President Trump's "Stop the Steal" Campaign

Almost immediately after his defeat in 2020, President Trump and his political allies initiated a campaign to legitimize his claims of election fraud and deployed the DOJ to further that aim. *See* A-9; *see also United States v. Trump*, 23-cr-00257 (D.D.C. 2023), Dkt. No. 1 at 6 ("The Defendant and co-conspirators attempted to use the power and authority of the Justice Department to conduct sham election crime investigations . . ."). That campaign involved public attacks on companies that provided technology used in the election, including Smartmatic, despite Smartmatic's limited role in that election: Smartmatic USA had supplied Los Angeles County (a jurisdiction President Trump lost by more than 1.8 million votes[7]) with ballot marking devices that were not even used for the purpose of counting or tabulating of votes.

Nevertheless, Smartmatic was subjected to an aggressive campaign of defamatory statements made across various media outlets by the President's political allies, who falsely claimed that Smartmatic had "rigged" the 2020 U.S. presidential election and other elections. For example, while speaking on Fox News on November 14, 2020, Rudy Giuliani claimed that Smartmatic was operating behind a "front" company and was responsible for "counting our vote in Michigan, Arizona and Georgia and other states." A-4. That same day, Sidney Powell, who presented herself as investigating the 2020 election, falsely claimed on Fox News that Smartmatic was involved in a "huge criminal conspiracy that should be investigated by military intelligence." A-5. Current U.S. Attorney for the District of Columbia Jeanine Pirro, then a Fox host, responded, "Yes and hopefully the Department of Justice . . . Sidney Powell, good luck on your, on your

---

[7] *See* LA County Election Results, Los Angeles County Registrar-Recorder/County Clerk, https://results.lavote.gov/text-results/4193 (last accessed Mar. 10, 2026).

mission." *Id*. Less than a week later, Powell went on to claim that Smartmatic was created in Venezuela "at the direction of" Hugo Chavez to rig elections. A-6. And, on December 1, 2020, President Trump retweeted a tweet that falsely accused Smartmatic of manipulating Venezuelan elections and wrote "Disgraceful!" A-7. He continued to retweet election fraud falsities about Smartmatic the following week on Twitter. A-8.

**B.     Smartmatic Sues President Trump's Political Allies for Defamation**

President Trump and his allies' "stop the steal" campaign failed to invalidate the election results. However, his political allies succeeded in severely damaging their victims' reputations and businesses, resulting in Smartmatic's filing of defamation lawsuits against the individuals and organizations involved in making false statements about Smartmatic's role in the election. Among the defendants named in the 2021–2022 defamation lawsuits are Fox News, Newsmax Media, Rudy Giuliani, Sidney Powell, Michael Lindell, and Pirro[8]—all longtime and staunch supporters of President Trump, some now even part of the presidential administration. As of May 2025, Pirro was the twenty-third Fox News employee to join the Trump administration.[9]

**C.     In 2025, the Trump Administration Resumes Focus on the 2020 Election and Vindictively Deploys the DOJ**

In the months leading up to SGO's indictment, President Trump's fixation with revisiting the 2020 election and using the DOJ to target associated individuals and entities became even more

---

[8] *See Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021 (N.Y. Sup. Ct. 2021); *Smartmatic USA Corp., et. al. v. Newsmax Media, Inc.*, No. N21C-11-028 (Del. Super. Ct. 2021); *Smartmatic USA Corp. v. Herring Networks, Inc.*, No. 1:21-cv-02900 (D.D.C. 2021); and *Smartmatic USA Corp. v. Lindell*, No. 0:22-cv-0098 (D. Minn. 2022).

[9] *See* David Folkenflik, *The Fox-To-Trump Funnel Sweeps Up Jeanine Pirro of 'The Five'*, NPR (May 10, 2025), https://www.npr.org/2025/05/10/nx-s1-5393885/jeanine-pirro-fox-news-trump-us-attorney.

acute.[10] The President repeatedly and publicly instructed his subordinates to use their power to bring criminal cases related to the 2020 election. For example, in June 2025, the President posted on Truth Social:

> [T]he 2020 election was a total FRAUD! The evidence is MASSIVE and OVERWHELMING. A Special Prosecutor must be appointed. This cannot be allowed to happen again in the United States of America! Let the work begin! What this Crooked man, and his CORRUPT CRONIES, have done to our Country in 4 years, is grossly indescribable! MAKE AMERICA GREAT AGAIN! (A-18).

The defendants in Smartmatic's defamation lawsuits, such as Lindell, publicly joined the President's calls to punish those involved in the 2020 election. In February and July 2025, for example, Lindell reported that he had met with the President multiple times to discuss punishing those involved with the 2020 election; in February 2025, he told the press that the President and he had agreed, "[W]e can go back and address the 2020, the 2022, all these elections and say, you know, where were the crimes committed and who did it and then what did I say many times, melt down the machines and *turn them into prison bars*." A-16 (emphasis added); A-19. The social media posts and public statements of the President and his political allies explicitly connected the threat of *criminal prosecution* with the President's grievances surrounding the 2020 election.

The President's fixation on the 2020 election has influenced significant policy, personnel, and prosecutorial decisions within the DOJ. In one of his first official actions, the President pardoned participants who—out of loyalty to him and advancing these same fraud claims— attacked the Capitol on January 6, 2021. A-13. The President has ordered DOJ to use its powers

---

[10] For example, in September 2025, the DOJ indicted former FBI Director James Comey, a longtime opponent of the President's. *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. 2025). In early October 2025, the Department brought bank fraud charges against New York Attorney General Letitia James, after she had sued the President for civil fraud. *United States v. James*, No. 2:25-cr-122 (E.D. Va. 2025). In February 2026, the President attempted, unsuccessfully, to secure indictments against six sitting members of Congress. A-35. And on March 3, 2026, the President repeated his public calls for former DOJ Special Counsel Jack Smith to "be brought to Justice." A-39.

to investigate far-fetched fraud claims surrounding the 2020 election. *See, e.g.*, A-23. After his election, the President selected law enforcement officials based in part on a loyalty test: did they think the 2020 election was stolen? A-14. Attorney General Bondi passed the test, having baselessly proclaimed in 2020 that there was "evidence of cheating" in the election (A-3, A-11) and recently refusing to confirm that President Trump lost the 2020 election (A-12). President Trump-appointed U.S. Attorney Jason A. Reding Quiñones, who assumed the role in the Southern District of Florida in August 2025, has also led investigations of the President's political foes. A-15; A-27; A-28. Just weeks into his tenure, U.S. Attorney Quiñones added his stamp of imprimatur to the superseding indictment against Smartmatic.

### D. The Administration and Its Allies' Post-Indictment Attacks on SGO

Both before and after SGO's indictment, and in the lead up to the 2026 midterm elections, pursuing prosecutions related to the 2020 election and sowing doubt as to the legitimacy of voting technology companies remain at the forefront of the President's priorities. For example, in August 2025, President Trump threatened to issue an executive order banning "Very Expensive, and Seriously Controversial VOTING MACHINES." A-20. On October 24, 2025, the President posted that those who "cheated and rigged the 2020 Presidential Election . . . should be prosecuted[.]" A-24. Similarly, on October 26, he posted that the 2020 election had been "rigged" and "stolen" and that he "hope[s] the DOJ pursues this with as much 'gusto' as befitting the biggest SCANDAL in American history!" A-25. In January 2026, he wrote, after calling the 2020 election rigged, "There must be a price to pay, and it has got to be a BIG ONE!" A-33; *see also* A-38.

President Trump also joined his media and political allies in attacking Smartmatic specifically. On more than one occasion post-indictment, the President has reposted videos claiming that Smartmatic was involved in the rigging of elections around the world, including the U.S. 2020 presidential election. A-26; A-29. On February 5, 2026, the President posted a video to

Truth Social that advanced claims of purported rigging of the 2020 election and explicitly referenced Smartmatic. A-34. Days later, on February 12, in response to questions about the video, President Trump publicly described it as a "strong piece on voter fraud," again confirming his view that Smartmatic was somehow involved in the same. A-36.

The indictment of the company has been exploited by President Trump's media and political allies in Smartmatic's defamation litigations who have (1) long supported the attacks on Smartmatic, (2) publicly praised the DOJ's decision to prosecute SGO, and (3) attempted to use the indictment to their advantage in defending the civil suits. For example, just weeks before SGO was charged, a court in the District of Minnesota granted partial summary judgment against Lindell, ruling that his statements that Smartmatic stole the 2020 election for President Biden were defamatory and false. *Smartmatic USA Corp. v. Lindell*, No. 0:22-cv-0098 (D. Minn. 2022), Dkt. No. 522. Immediately after the superseding indictment was unsealed in October 2025, Lindell used the indictment to argue that he had a right to appeal that ruling and to fundraise (A-22):



Likewise, Fox News—which paid $787 million to Dominion Voting Systems to settle defamation allegations in connection with claims about the 2020 election and is facing greater potential liability in the Smartmatic case (A-10)—tried, unsuccessfully, for years to leverage the DOJ investigation to delay and reduce its exposure in the defamation litigation. *See, e.g.*, *Smartmatic USA Corp., et al v. Fox Corp. et al.*, Index No. 151136/2021 (N.Y. Sup. Ct. 2021), Dkt. Nos. 1157, 1385 (ruling that judicial hearing officer had "correctly determined that documents

related to the FCPA investigation into plaintiffs are not discoverable."). But after SGO was indicted, Fox argued that the superseding indictment "fundamentally changed" its case and has relied on the superseding indictment to seek delays of Smartmatic's defamation lawsuit and to bolster its claimed defenses. *See id*. at Dkt. No. 2645.[11]

## ARGUMENT

While the Executive Branch has broad discretion in determining whom to prosecute, *United States v. Nixon*, 418 U.S. 683, 693 (1974), that discretion is not "unfettered," *United States v. Batchelder*, 442 U.S. 114, 124-125 (1979). Like all actors in our system, the President and the DOJ are constrained by, and must follow, the Constitution. *Id*. at 125. The constitutional constraints imposed on prosecutorial decision-making are designed to prevent targeting defendants based on animus. Indeed, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). In addition to its prohibition against vindictive prosecution, the Constitution also bars prosecutors from impermissibly selecting targets to prosecute for discriminatory purposes. *United States v. Armstrong*, 517 U.S. 456, 464-465 (1996). If a prosecution is vindictive or selective, then courts should dismiss the resulting indictment. *See* Fed. R. Crim. P. 12(b)(3)(A)(iv); *United States*

---

[11] Notably, Attorney General Bondi's brother, Bradley Bondi, is a lawyer representing Fox in civil litigation. A month prior to the filing of the superseding indictment, Bradley Bondi entered his appearance for Fox News in a federal antitrust matter on September 23, 2025. *See Newsmax v. Fox*, No. 3:25-cv-00770 (W.D. Wis. 2025), Dkt. No. 17. And Smartmatic's separate counsel in its defamation lawsuit has represented that "***Fox has admitted that it has been communicating with the DOJ about Smartmatic's criminal case,***" and that "Smartmatic has it on good authority that ***discovery into Fox's communications with the DOJ and the Trump Administration will show that Fox procured the indictment of Smartmatic*** and, with the DOJ's cooperation, weaponized it to gain tactical advantage in this case." *Smartmatic USA Corp., et al v. Fox Corp. et al.*, Index No. 151136/2021 (N.Y. Sup. Ct. 2021), Dkt. No. 2780.

*v. Carey*, __ F. Supp. 3d __, No. 25-251 (JEB), 2026 WL 141919, at *5 (D.D.C. 2026) (Boasberg, J.) (citing *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)).

While a "strong presumption of regularity" has historically been afforded to prosecutorial decision-making, *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000), now, as a result of the extraordinary and irregular charging decisions, misrepresentations, bad-faith representations to courts, and violations of their orders, "the President of the United States may have forfeited the right to such a presumption of regularity." *Fed. Educ. Assoc. v. Trump*, 795 F. Supp. 3d 74, 92 (D.D.C. 2025);[12] *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (the presumption of regularity does not apply where the record shows that the government's actions are infected with "bad faith or improper behavior").

For years, Smartmatic has been attacked by Fox News and President Trump's allies for its perceived role in the 2020 election, through repeated implications and express statements that the company was part of an effort to rig the results in favor of President Biden. *E.g.*, A-4; A-6; A-7, A-22. Again, several of those allies are defendants in defamation lawsuits advanced by Smartmatic and so the targeting of Smartmatic presents the added benefit of affording potential claimed defenses to those closest to President Trump and his loudest megaphone of all—Fox News.

Similarly irrefutable is the admitted desire of President Trump and the DOJ to seek retribution through the (attempted or actual) prosecution of individuals and companies involved in the 2020 election or its aftermath. A-25. That is what has happened here. As set forth below, the direct and circumstantial evidence of the Executive Branch's unlawful animus towards Smartmatic

---

[12] In *Federal Education Association*, Judge Friedman cited 26 examples of departure from the presumption of regularity during the first six months of the second Trump Administration. *See also* Goodman et. al, *The 'Presumption of Regularity' in Trump Administration Litigation*, JUST SECURITY (Nov. 20, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation.

supports a finding of actual and presumptive vindictiveness and warrants dismissal of the indictment. Even if this Court determines that outright dismissal is not warranted (it is), at a minimum, due process requires discovery and a thorough factfinding hearing into the unconstitutional targeting of SGO and the decision to pursue this flawed indictment.

## I.    <u>The Government Has Vindictively Prosecuted SGO</u>

A defendant prevails on a motion to dismiss for vindictive prosecution if it can show "actual vindictiveness," meaning that there is direct evidence that the government acted with animus toward the defendant, *see United States. v. Barner*, 441 F.3d 1310, 1322 (11th Cir. 2006) (citing *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001)), *or* if it "can point to circumstantial evidence that suggests that the [g]overnment acted vindictively," *Carey*, 2026 WL 141919, at *8. In other words, the defendant need not produce "direct evidence of the [g]overnment's vindictive motive;" rather, "if he shows that his case fits a general fact pattern in which there is a 'realistic likelihood' of vindictiveness, then he creates a presumption that his prosecution was vindictive." *Id.* (quoting *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017)); *see also United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993) ("[A] defendant may show facts sufficient to give rise to a presumption of vindictiveness.") (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).[13] Significantly, a defendant need not show that "vindictiveness is the *sole* reason for the charge" or that there was no probable cause for the charge. *Carey*, 2026 WL 141919, at *8-9 (collecting cases).

---

[13] The Eleventh Circuit has "neither adopted nor rejected a per se rule that the presumption of vindictiveness cannot apply in a pre-trial setting," but has stated that, for such a pretrial presumption to arise, "compelling facts . . . would have to form a realistic likelihood of vindictiveness." *Barner*, 441 F.3d at 1318.

Moreover, even where line prosecutors responsible for bringing a case do not harbor improper animus toward the defendant, dismissal remains appropriate where they were "prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a stalking horse." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (citation and internal quotation marks omitted); *see also United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (defendant showed "'evidence' of vindictive prosecution" where "the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for *[the defendant's] exercise of her statutory right to sue*") (emphasis added).

### A.     The Government's Actual or Presumed Vindictiveness Towards SGO

Given the circumstances and timing around SGO's indictment, the presumption of vindictiveness applies here. The animus against SGO's subsidiary Smartmatic—which formed when the President lost the 2020 election—has metastasized since he has taken office for the second time. Smartmatic was the target of an acute and pervasive campaign of defamation undertaken by the President's political allies, who have used their social media platforms and news networks to claim, without evidentiary support, that Smartmatic rigged the election against him. Tellingly, in the days following SGO's criminal indictment, they celebrated the fact that entities involved in the 2020 election were being criminally prosecuted. *See, e.g.*, A-22.

These facts alone reveal a president with animus toward SGO, *Barner*, 441 F.3d at 1322, but when viewed together with the DOJ's recent conduct, the improper targeting of SGO comes into greater focus. Since President Trump's inauguration in 2025, he and the DOJ have repeatedly launched politically motivated investigations and prosecutions targeting the President's perceived political enemies. They have done so while simultaneously amplifying, at every opportunity, the claim that the 2020 election was rigged and stolen. These lines converge at one point: the decision to target Smartmatic and indict its parent company, SGO.

Further supporting the presumption of vindictiveness is the incongruity between this case and the DOJ's broader enforcement policies under President Trump and its deliberate retreat from FCPA enforcement. Despite the shuttering of other corporate FCPA investigations and the issuance of countless pardons of individuals charged with fraud and corruption offenses, SGO was singled out for different treatment.

As noted above, even if a "defendant is unable to prove an improper motive with direct evidence, [it] may still present evidence of circumstances from which an improper vindictive motive may be presumed." *Wilson*, 262 F.3d at 314; *see also Carey*, 2026 WL 141919, at *8. Here, the litany of public statements, social media posts, and official actions taken by the President, his allies, and the DOJ constitutes *direct* evidence of animus. But even if the Court disagrees with that characterization upon making the "often subtle and difficult distinction between 'direct' and 'indirect' or 'circumstantial' evidence," *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 324–25 (2025) (Thomas, J., concurring), there is still ample evidence to support a presumption of vindictiveness. Whether viewed as direct or circumstantial evidence of animus, the facts here are more than enough to "form a realistic likelihood of vindictiveness." *Barner*, 441 F.3d at 1318. Coupled with the DOJ's recent pattern of prosecuting President Trump's foes, these circumstances warrant a shift in the burden for DOJ defend its prosecutorial motive.

## B.    The Administration's Animus Towards SGO Contributed to Its Indictment

There is also ample evidence that SGO was indicted, at least in part, based on its limited role in the 2020 election and on its proper exercise of its First Amendment rights both to publicly and vehemently defend its integrity and to bring defamation lawsuits against the President's political allies and Fox News. *See Little v. City of North Miami*, 805 F.2d 962, 968 (11th Cir. 1986) ("[The Constitution] forbids the imposition of retaliatory sanctions designed to punish the legitimate exercise of First Amendment rights," accordingly the government "may not retaliate

14

against an individual because of that person's legitimate use of the courts."); *see also Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1427–28 (8th Cir. 1986) ("An individual's constitutional right of access to the courts cannot be impaired, either directly or indirectly, by threatening or harassing an individual in retaliation for filing lawsuits") (citation modified).

Here, again, the timing of SGO's indictment and the fact that it was based on no new evidence support the conclusion that animus was the motivating factor. Following a lengthy investigation, the prior administration's DOJ did not pursue charges against SGO for any crime and elected to proceed to trial against other defendants. But within months of President Trump returning to office, his DOJ indicted the company that had been falsely accused of rigging the 2020 election that the President lost. It is not a coincidence that immediately thereafter, the President's political allies who are defendants in defamation cases pursued by Smartmatic, where they face significant exposure, sought to leverage the indictment for their own personal litigation advantage—using it as their main defense, whether that be delay, dismissal or reducing damages, or even to seek donations from the public. The only logical and supportable explanation for the DOJ's reversal is the Executive Branch's improper animus towards SGO.

## II.   The Government Has Selectively Prosecuted SGO in Violation of the Equal Protection Clause

In addition to its prohibition against vindictive prosecution, the Constitution bars prosecutors from impermissibly selecting targets to prosecute for discriminatory purposes. *Armstrong*, 517 U.S. at 464–65; *see also United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) ("Discrimination on the basis of the exercise of protected First Amendment activities" is forbidden.); *see, e.g.*, *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (reversing conviction where prosecution was based on speech).

To prevail on a motion to dismiss based on selective prosecution, a defendant must show both a prosecution's "discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021). Such a showing requires the defendant to establish "(1) that similarly situated individuals . . . were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation modified).

### A. The Government Has Declined to Prosecute or Dismissed Charges Against Similarly Situated Companies and Individuals

There is no dispute that, after President Biden's DOJ chose not to charge any Smartmatic affiliated company alongside individuals, President Trump's DOJ purposely selected SGO for prosecution. The question of legal significance here is why. A defendant may prove a discriminatory effect by showing that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see, e.g., Falk*, 479 F.2d at 619–22 (vacating conviction and remanding case where defendant presented evidence that he was "singled out for selective and discriminatory treatment" because of his vocal opposition to the Vietnam War when he was prosecuted for failing to possess a draft registration card, and where there was evidence that "few indictments were brought for non-possession of draft cards" and that the government had a "published government policy not to prosecute violators of the card possession regulations").

Here, the idiosyncrasy of SGO's prosecution is blatant. Even before the Trump Administration's full-scale retreat from FCPA investigations and prosecutions, the DOJ had rarely indicted corporations for violations of the FCPA. Indeed, SGO's indictment was the first under the FCPA in more than 15 years, and SGO appears to be only the second company ever brought to trial on FCPA charges. While it is true that the FCPA Unit has resolved investigations over the

16

years with several corporate entities, it is simply not true that whenever individual employees or agents of a company are indicted under the FCPA, a resolution or charges for the employer follow. It is also patently untrue that where a company refuses to plead or enter into some sort of deferred or non-prosecution agreement, an indictment follows. *See* A-2. DOJ representatives remind the public often that its primary aim is the prosecution of individuals, and the DOJ has closed case after corporate case during the last year pursuant to its own espoused principles and priorities.[14] Moreover, because most foreign companies have little exposure to the United States, charging one is unlikely to provide significant general deterrence value, stripping away one of the core factors that might weigh in favor of prosecuting a corporation. Indeed, the message the DOJ is sending here has nothing to do with traditional principles of deterrence and everything to do with not crossing the President and his allies.

### B.   SGO Was Indicted with Discriminatory Purpose

For many of the same reasons the decision to prosecute SGO was vindictive, it was also selective. *See  United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979) (discriminatory purpose can be shown through evidence that the individual or entity was prosecuted based on personal or political bias against that defendant); *Goodfellas, Inc. v. Dunkel,* 2016 WL 6599977, at *9 (M.D. Pa. 2016) ("[A] prosecuting body's personal bias unrelated to suspect classifications may serve as a cognizable 'arbitrary factor' for purposes of a selective enforcement claim").

---

[14] *See* STANFORD LAW SCHOOL, *2025 Q2 Report*, Foreign Corrupt Practices Act Clearinghouse (2025), https://fcpa.stanford.edu/fcpac-reports/2025-fcpa-q2-report.pdf (reporting closure of FCPA investigations of Digicel Group, Ltd., Stryker Corporation, Toyota Motor Corporation, and PetroNor E&P ASA, among others); PUBLIC CITIZEN, *Tracker: Corporate Enforcement At Risk, Investigations and Cases Against Corporate Misconduct at Risk Under Trump* (2026), https://www.citizen.org/article/corporate-enforcement-trump-tracker/. DOJ also cut short deferred prosecution agreements entered into by companies like ABB and Albemarle and terminated monitorships imposed on companies like Glencore, which pled guilty to FCPA violations.

The relentless attacks by the President and his allies concerning the 2020 election—and Smartmatic's subsequent defamation lawsuits against members of the President's inner circle and primary media ally Fox News—suggest a discriminatory purpose as to *why* SGO has been singled out as the first corporate defendant in 15 years to be indicted for FCPA charges. Put simply, the charging decision is consistent with an Administration that prioritizes targeting its enemies over the equal protection of the law. As detailed above, the government is treating SGO differently from other would-be defendants based on Smartmatic's exercise of its First Amendment rights and its actions taken in perceived opposition to the President's preferred political outcomes.

This record supports a finding of unconstitutional selectivity in bringing this case against SGO, warranting dismissal by this Court. *See United States v. Bundy*, 968 F.3d 1019, 1031, 1043 (9th Cir. 2020) (dismissal with prejudice is warranted where there has been "flagrant misbehavior" by the government, resulting in "substantial prejudice" to the accused).

## III.     At a Minimum, SGO Is Entitled to Discovery and a Hearing

The decision to prosecute a company typically involves a careful balancing of factors; neither retribution nor discrimination are among them, yet that is what both the direct and circumstantial evidence before this Court demonstrates happened here. Therefore, SGO submits that the appropriate remedy here is dismissal with prejudice. At a minimum, the record warrants further discovery and a hearing as to whether SGO's indictment was vindictive and selective.

First, to obtain discovery, a defendant need only demonstrate a "colorable claim" of selective or vindictive prosecution. *Carey*, 2026 WL 141919, at *10; *see also United States v. Abrego-Garcia*, 802 F. Supp. 3d 1055, 1058 (M.D. Tenn. 2025) (citing *Adams*, 870 F.2d at 1146 (defendant entitled to discovery when there is some evidence of vindictiveness)). Second, as the Eleventh Circuit has made clear, "in order to obtain an evidentiary hearing on a selective prosecution claim, the defendant must present facts sufficient to create a reasonable doubt about

the constitutionality of a prosecution." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (citation modified). Both thresholds are easily met here.

The timing of SGO's indictment alone—a decade after the relevant alleged conduct occurred, 14 months after the individual defendants in this case were indicted and headed to trial, and following multiple failed attempts by Fox News and others to thwart pending defamation cases—more than establishes a prima facie showing of vindictive and selective prosecution. This case is analogous to *Abrego-Garcia*, where the court found that the defendant had demonstrated a "realistic likelihood of vindictiveness" based on the timing of his indictment; the events underlying the indictment of Abrego-Garcia occurred three years before he was charged, he was released from custody shortly after without charges, and only after he successfully sued senior Administration officials in 2025 to challenge the Administration's decision to remove him to El Salvador did a criminal prosecution commence. *Abrego-Garcia*, 802 F. Supp. 3d at 1059–65.

Moreover, as discussed *supra* at II.A and II.D, public statements by the President and his allies show that the Executive Branch harbors animus to Smartmatic, and that the President has directed subordinates within to prosecute entities involved in the 2020 U.S. election. The fact that those statements were not made by the individual prosecutors who brought this case is irrelevant. *See Abrego-Garcia*, 802 F. Supp. 3d at 1063 (rejecting government's argument that "motives of the Executive Official Defendants [are] irrelevant because they are not the day-to-day prosecutors in this case" because discovery may show that DHS "induced the DOJ to indict Abrego."). It is the President's face alone on the massive banner now draped across Main Justice. A-37.

The objective evidence in the case firmly establishes a "colorable claim" of selective or vindictive prosecution, *Carey*, 2026 WL 141919, at *10, and discovery may reveal additional evidence that the Administration, potentially under the influence of Fox News or other allies

19

staring down defamation claims, directed DOJ to indict SGO. In light of this showing, if the Court does not dismiss the indictment on the present record, it should at a minimum afford SGO discovery into the government's prosecutorial decisions in this case. Following such discovery, the burden must shift to the government to "rebut[] the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" *Abrego-Garcia*, 802 F. Supp. 3d at 1065 (quoting *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021)). Only robust discovery and an evidentiary hearing will allow Smartmatic to further develop the record of an appalling abuse of executive authority.[15]

## **CONCLUSION**

SGO is being prosecuted because the President has claimed the 2020 election was rigged, his political and media allies falsely identified Smartmatic as one of the companies involved in rigging that election, and Smartmatic exercised its rights to litigate the falsity of that claim against the staunchest of the President's allies. The prosecution of SGO furthers their collective false narrative that President Trump did not actually lose the 2020 election and provides perceived defenses and delay excuses for his allies in their defamation cases. Because DOJ's actions violate the Due Process Clause and undermine the rule of law, this Court should dismiss the superseding indictment with prejudice, or in the alternative, permit discovery and an evidentiary hearing on this issue.

---

[15] To the extent the Court permits discovery on this issue, SGO submits that discovery should include, at least, all communications between the White House, and any of its agents or representatives, and the DOJ concerning SGO or its affiliates. Relevant topics would include whether DOJ's decision to charge SGO was to retaliate against Smartmatic for exercising its legal rights to bring the defamation lawsuits.

Date:   March 10, 2026

_/s/ Christopher C. Marquardt_
Jenny Kramer (admitted _pro hac vice_)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9420
Jenny.Kramer@alston.com

Christopher C. Marquardt
Florida Bar No. 0102466
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Chris.Marquardt@alston.com

_Counsel for SGO Corporation Limited_

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(b)(2), SGO respectfully requests oral argument on this Motion because the Motion raises issues that are potentially dispositive to the charges against SGO and involves substantial factual material and issues that are unique to this case. As noted in the Motion, SGO submits that its indictment was the result of an abuse of prosecutorial discretion that offends the Constitution and the rule of law. It requests oral argument to address the merits of the Motion and any questions the Court may have about the Motion.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent an e-mail notification of such filing to all CM/ECF participants on March 10, 2026.

*/s/ Christopher C. Marquardt*
Christopher C. Marquardt